IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE L. KOYNOK,

    Plaintiff,

v.

THOMAS R. LLOYD, Mayor of Dormont
Borough, individually and in his official
capacity, JOSEPH M. COSTANZO, former
President of Dormont Borough Council,
individually and in his official capacity,
KRISTEN DENNE, former Assistant Manager
of Dormont Borough, individually and in her
official capacity, THOMAS H. AYOOB, III,
Solicitor of Dormont Borough, individually and
in his official capacity, PATRICK KELLY,
Building Inspector/Code Enforcement Officer,
individually and in his capacity, RUSSELL J.
MCKIBBEN, former Interim Borough Manager
and Police Chief of Dormont Borough,
individually and in his official capacity,
DORMONT BOROUGH,

    Defendants.

06cv1200
ELECTRONICALLY FILED

**Memorandum Opinion**

I.    **Introduction/Procedural History**

Plaintiff, who is proceeding *pro se,*[1] and owns property in Dormont Borough, Pittsburgh, Pennsylvania, sought a variance in 2003 that he might use his property (a single family home) as

---

[1] In the most recent filings and motions to the Court, the Court has had some difficulty discerning plaintiff's arguments, which are somewhat disjointed and confusing. However, the Court has made all attempts to construe plaintiff's arguments in a fair and consistent manner. The Court has given plaintiff every opportunity to be heard on all issues and has provided for additional briefing on the motions for summary judgment (see text order of 2/23/10).

a boardinghouse. After the variance was denied, plaintiff pursued an appeal of the Zoning Hearing Board decision in the Allegheny Court of Common Pleas, who affirmed the decision and dismissed the appeal. No further appeal was commenced by plaintiff on the 2003 variance. Then, in 2005, plaintiff again applied to the Zoning Hearing Board for a "special exception" to use this same property as a boardinghouse, which was again denied both by the Zoning Hearing Board, and on appeal to the Court of Common Pleas of Allegheny County. This time, plaintiff sought review in the Pennsylvania Commonwealth Court, and the Court ultimately agreed with the Zoning Hearing Board and affirmed its decision in September 2007.

Meanwhile, in September 2006, plaintiff brought the instant civil action under 42 U.S.C. §§ 1983 and 1985(3) against Dormont Borough and various employees in their individual and official capacities, seeking injunctive relief and damages for alleged violations of his constitutional rights.

In the prior proceedings before this Court, defendants filed its first motion to dismiss the case under Fed. R. Civ. P. 12(b)(6), and the Court, ultimately abstained and stayed the action under *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, and denied the motion to dismiss without prejudice to re-filing the motion at the conclusion of the state court proceedings.

Then, in August 2008, after the Pennsylvania Supreme Court denied plaintiff's allowance to appeal the Commonwealth Court's decision, defendants moved to re-open this civil action, which the Court granted. Defendants filed a new motion to dismiss, and this Court ultimately applied the *Rooker-Feldman* doctrine and dismissed this case for lack of subject matter jurisdiction. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)  This Court found, *inter alia*, that the instant

action is nothing more than a spin-off of the state court proceedings, and denied the motion to dismiss as moot. Plaintiff appealed and the United States Court of Appeals for the Third Circuit issued an opinion on June 18, 2009 (doc. no. 44-2) finding that *Rooker-Feldman* did not apply to the recent state court proceedings, and stated that the Court should review the entire record of the earlier state court proceedings to determine whether *Rooker-Feldman* was applicable.

Upon remand, the Court ordered the parties to file a complete record of the "earlier" state court proceedings. On July 27, 2009, the Court conducted an Initial Case Management Conference and set forth a Case Management Order as well as a Pretrial Order (doc. nos. 61, 62). On the same day as the Initial Case Management Conference, plaintiff then filed a motion to amend his complaint, which this Court granted on July 28, 2009.

Plaintiff's amended complaint sets forth claims for alleged violations of plaintiff's constitutional rights to equal protection, and procedural and substantive due process (plaintiff dismissed his Eighth Amendment claims in his amended complaint) (doc. no. 65). Consistent with the discussion at the Initial Case Management Conference, the parties then submitted a complete record of the state court proceedings (doc. no. 68). On August 17, 2009, defendants filed a motion for judgment on the pleadings (doc. no. 72), and, after full briefing on the issue, on September 11, 2009, the Court denied said motion (doc. no. 80), thereby affording plaintiff the opportunity to develop the record through the discovery process, without prejudice to defendants raising the issues set forth therein in a motion for summary judgment.

Currently pending before this Court are the parties motions for summary judgment (doc. nos. 88 and 99) with supporting documentation. For the reasons set forth below, defendants' motion for summary judgment (doc. no. 99) will be GRANTED, and plaintiff's motion for

summary judgment (doc. no. 88) will be DENIED.

**II.     Background Facts**

The parties have filed dueling motions for summary judgment with differing versions of alleged undisputed material facts, and *pro se* plaintiff has failed to set forth his undisputed material facts in a manner consistent with this Court's practices and procedures.  Furthermore, plaintiff has not fully admitted one factual allegation submitted by defendants (doc. no. 107), and instead has moved to strike approximately 11 out of 18 of defendants' statement of undisputed material facts (doc. no. 109), which will be DENIED.  The Court finds that the vast majority of plaintiff's alleged denials are unresponsive to the factual allegations set forth by defendants (see doc. no. 107).  Nonetheless, the Court has attempted to parse the factual history (including the record of the state court proceedings at doc. no. 68), and has fairly set forth the following material factual history in the light most favorable to the non-moving party.

1.  Plaintiff initiated the instant action alleging violations of his civil and constitutional rights in connection with the use of his property at 2850 Glenmore Avenue, Pittsburgh, Pennsylvania, as a boarding/rooming house.

2.  In 1962, the Pennsylvania Department of Labor and Industry approved Koynok's dwelling as a special occupancy boarding house and school, and issued him an occupancy permit for such use.

3.  Plaintiff alleges that in 1991, he decided to sell said dwelling to buyers who wanted to continue the school use.

4.  Plaintiff applied for and received a single occupancy permit for his 2850 Glenmore

Avenue property on October 4, 1991. Plaintiff currently resides on the first floor of the property and makes three (3) other units available for rent.

    5. Plaintiff alleges that he was told by Borough of Dormont Official (Deborah Glass) that a sale and change of owners would abrogate any rights and privileges granted specifically to Koynok.

    6. In 1995, the Borough, through the Dormont Borough Zoning Code, changed the R-4 district to the current R-2 zone where single and double family residences may be erected by right.

    7. Therefore, commercial uses of property located in the R-2 zoning district were forbidden.

    8. Section 210-21A of the Dormont Borough Zoning Hearing Board permits the following uses in an R-2 District: single family dwellings, two family dwellings, legally existing and of record at the time the chapter was adopted, new construction of two family dwelling on vacant lots, and essential services.

    9. Plaintiff submits his own affidavit stating that single-family residences were openly conducting commercial businesses, but fails to attach any record support for his statement.

    10. In 2003, Borough Agent Patrick Kelly, a building inspector, after conducting an investigation, reported that Koynok was renting four (4) apartments contrary to the Borough ordinance for which he was subject to criminal penalties.

    11. According to plaintiff, three (3) units were not apartments, because they did not contain kitchens, and two (2) had no self-contained bathrooms, and thus were "sleeping rooms" not apartments.

12. According to plaintiff, inspector Kelly, on behalf of Dormont Borough "forced" plaintiff to apply for a variance hearing in 2003 relative to the apartments plaintiff alleges he did not have, nor intended to install. Defendants submit the affidavit of Mr. Kelly, who stated that he did not "force" plaintiff to apply for a variance hearing in 2003.

13. Nonetheless, on March 6, 2003, Koynok filed an application seeking a use variance with the Dormont Borough Zoning Hearing Board, in which he sought to convert the 2850 Glenmore Avenue property to a multi-family dwelling.

14. Nonetheless, eight (8) days before the hearing plaintiff served Borough agents Kelly and Kristen Denne (Borough assistant manager), and all hearing board members with an affidavit and the L & I blue prints which states the dwelling had no apartments and that plaintiff did not want apartments.

15. The Borough conducted a hearing on the use variance, at plaintiff's request, and according to plaintiff he "lost" and was "embarrassed and humiliated" by it because the local community was invited to attend. Defendants deny plaintiff's allegations regarding inviting the local community.

16. Plaintiff alleges that Borough Manager, Deborah Grass, caused plaintiff to lose the buyers he had obtained. Defendants deny these contentions, and submit the affidavit of Ms. Grass, who stated that in conducting her duties to Dormont Borough, she acted in accordance with all applicable laws, policies, and procedures.

17. On May 8, 2003, Koynok filed a statutory appeal from the denial of his variance request with the Court of Common Pleas of Allegheny County.

18. In the variance action, Koynok raised the following issues on appeal:

(i) the validity of the 1991 occupancy permit;

(ii) his contention that the Zoning Hearing Board had omitted key evidence from the record; and

(iii) his contention that the 2850 Glenmore Avenue property was improperly designated as being in an R-2 Residential District.

19. The Honorable Joseph James, of the Court of Common Pleas of Allegheny County, affirmed the 2003 decision of the Zoning Hearing Board, and dismissed Koynok's appeal. Judge James stated that Koynok had presented no evidence entitled him to the variance that he requested and that his alleged hardship arose out of his failure to follow the Zoning Ordinance.

20. Plaintiff did not take an appeal from the decision of Judge James to the Commonwealth Court of Pennsylvania.

21. Then, on November 28, 2005, plaintiff filed an application for "use by special exception," with the Zoning Hearing Board for the 2850 Glenmore Avenue property. His application sought tp use the property as a boardinghouse.

22. On January 19, 2006, a zoning hearing was held to consider plaintiff's request for the special exception, and on February 6, 2006, the Zoning Hearing Board entered an Order denying plaintiff's request for "use by special exception," by finding that the operation of a boarding house/rooming house was not authorized within an R-2 Residential District.

23. In September, 2006, plaintiff filed the instant action and the Court abstained from exercising jurisdiction at that time and stayed the case pending the outcome of the state court proceedings.

24. Plaintiff appealed the special exception action to the Court of Common Pleas of

Allegheny County, the Commonwealth Court of Pennsylvania, and the Supreme Court of Pennsylvania. His appeals were unsuccessful.

25. In the special exception action, plaintiff raised the following issues on appeal:[2]

(i) that Dormont Borough Zoning Ordinance 1530 was invalid;

(ii) that the Dormont Borough Municipal Zoning Code was invalid;

(iii) that his property's designation as being located in an R-2 Residential District was in error; and

(iv) that his 1991 occupancy permit was invalid.

26. In his appeal of the special exception, he also asserted that Dormont Borough had violated his Fourteenth Amendment right to procedural and substantive due process.

27. In the instant case, plaintiff raises the following issues:

(i) that Dormont Borough Ordinance 1530 is invalid;

(ii) that the Dormont Borough Municipal Zoning Code is invalid;

(iii) that his property is improperly designated as being in an R-2 residential district; and

(iv) that his 1991 occupancy permit is invalid.

28. Plaintiff also claims that Dormont Borough violated his substantive and procedural

---

[2]Incredibly, plaintiff seemingly disputes (doc. no. 107 at ¶ 15) that these were the issues raised in his appeal, despite the record evidence that he submitted as the appellant in the state court proceedings, which evidence the contrary (doc. no. 68-12). This is but one example of plaintiff's failure to file coherent responses which has made the task of determining the underlying facts most challenging for this Court. On March 4, 2010, defendants filed a motion to strike plaintiff's response to defendants' motion for summary judgment and plaintiff's reply brief to the summary judgment motions (doc. no. 119). Despite plaintiff's nonconformance with the practices and procedures and the Orders of this Court in numerous respects, the Court, having already considered plaintiff's response and reply and the factual contentions of the parties, will DENY said motion AS MOOT.

due process rights as well as his constitutional right to equal protection, when it denied his requests in the variance and special exception actions.

### III. Summary Judgment Standards

"Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."), citing *Anderson* and *Celotex Corp.*.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving

party.  *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999).  Further, the court must not engage in credibility determinations at the summary judgment stage.  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV.   Discussion

A.    **Fourteenth Amendment - Substantive Due Process**

In a land use decision, it is not sufficient to allege a due process or equal protection claim in order to raise a substantial federal question under 42 U.S.C. § 1983.  The question of whether a land use decision constitutes a violation of due process must be determined by the application of the "shocks the conscience" test, which was set forth by the United States Supreme Court in *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1988), and was further developed by the United States Court of Appeals for the Third Circuit in *UA Theater Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003).  See also, *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)).

The Court of Appeals in *UA Theater* recognized that the "shocks the conscience" standard encompasses "only the most egregious official conduct."  *Id*. at 400 (citations omitted).  The Court of Appeals further noted that the application of the "shocks the conscience" test in the context of a land use decision prevents federal courts from "being cast in the role of zoning board of appeals."  *Id*. at 402.  See *Eichenlaub*, at 285.

Under the standard of review for a motion to dismiss/motion for judgment on the

pleadings, the Court found that the conduct alleged by plaintiff in his amended complaint barely, if at all, set forth conscience shocking activity. However, despite this Court's misgivings, in an abundance of caution, the Court allowed plaintiff the opportunity to develop the record through the discovery process.

Plaintiff argues that defendants acted arbitrarily and unfairly in enacting the Dormont Borough Municipal Code, issuing his 1991 occupancy permit, and enacting Code 1530. However, what plaintiff has not presented is any factual support or record evidence to support his bare allegations. On the other hand, defendants have submitted numerous affidavits wherein the affiants have sworn that they acted in conformance with all applicable laws and procedures in enacting its Municipal Code, its ordinances, and in issuing plaintiff's 1991 occupancy permit.

Plaintiff has failed to put forth any evidence to support his allegations that defendants abused their power by acting arbitrarily with regard to his property, and therefore, he has failed to set forth any evidence that defendants engaged in any conscience shocking behaviors. Plaintiff has failed to provide one piece of evidence to establish the defendants acted inappropriately in denying his 2003 and 2006 zoning requests, nor has he set forth one scintilla of evidence that would amount to any type of conscience shocking behavior on the part of defendants. Simply because plaintiff says defendants acted arbitrarily and cites his own complaint and pretrial statement, does not make it so. *See Goussis v. Kimball, et al.*, 813 F.Supp. 352, 354 (E. D. Pa. 1993) (non-moving party must offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial . . . cannot simply reassert factually unsupported allegations in the pleadings). Viewing the facts in the light most favorable to the non-moving party, the Court finds that plaintiff has failed to make a factual showing sufficient to

establish a claim for violation of plaintiffs substantive due process rights.

### B. Fourteenth Amendment - Equal Protection

"The Supreme Court has held that a "'class of one,'" can attack intentionally different treatment if it is "'irrational and wholly arbitrary,'" *Eichenlaub*, at 286, citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Although it is unclear from the pleadings whether plaintiff intends to bring his equal protection claim based upon a "class of one" theory, to the extent plaintiff brings a claim for violation of his Fourteenth Amendment rights under the Equal Protection Clause (as opposed to being a member of a protected class) ("class of one," as opposed to being a member of a protected class) on the basis that he was treated more harshly than other similarly situated individuals, he has failed to set forth any evidence to support his claim.[3]

This Court previously set forth a discussion of the "class of one" theory in *Toth v. Bureau of Ambridge*, 2007 WL 776102 *2 (W.D. Pa. 2007), which bears repeating:

> In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court held that single individuals or entities who are not alleged to be members of a protected class can bring an equal protection claim under a theory of "class of one." *Id*. at 564 (per curiam). "Class of one" equal protection claims require that "the individual plaintiff alleges intentional and disparate treatment compared to others similarly situated and that there is no rational basis for the difference in treatment." *Id. See also Strain v. Bor. of Sharpsburg*, 2006 WL 2087497, *5 (W.D.Pa 2006) (citations

---

[3]Plaintiff has not plead that he is a member of a protected class, thus negating the most rigid level of scrutiny. *Hunter v. Erickson*, 393 U.S. 385, 391-92 (1969)

>omitted) ("A plaintiff asserting a 'class of one' claim must show that: (1) defendants, acting under color of state law, intentionally treated plaintiff differently from others similarly situated; and there was no rational basis for the difference in treatment."); *Montanye v. Wissahickon School Dist.*, 327 F. Supp.2d 510 (E.D. Pa. 2004) (numerous case omitted) ("to proceed on a 'class of one' theory in an equal protection claim, a plaintiff must allege sufficient facts demonstrating that: (1) defendants, acting under color of state law, intentionally treated plaintiff differently from others similarly situated and that (2) there is no rational basis for the difference in treatment.")

In this case, plaintiff has failed to identify any similarly situated individual that was treated differently by defendants, let alone that there was no rational basis for any difference in treatment. Because plaintiff has not set forth any evidence from which a fact finder could find that he was treated differently from other similarly situated persons, his "class of one" Equal Protection claim must fail.

C.  **Fourteenth Amendment - Procedural Due Process**

In order to establish a procedural due process violation, the Court must employ the "familiar two-stage analysis," inquiring (1) whether "the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,'"; and (2) whether the procedures available provided the plaintiff with "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) *quoting Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984).

In *Rogin v. Bensalem Twp*, 616 F.2d 680 (3d Cir. 198), *cert denied*, 450 U.S. 1029 (1981), plaintiff argued that a Pennsylvania municipality's administrative land use decision violated his procedural due process rights. The Court of Appeals for the Third Circuit held that

plaintiff had failed to establish a procedural due process claim where he "set forth [no] behavioral or structural allegations from which we can infer that [the] process was unconstitutional." *Id*. at 694.  The Court in *Rogin* noted that the Commonwealth of Pennsylvania's procedures for challenging zoning ordinances through a hearing with the Zoning Hearing Board, and right to appeal to the Court of Common Pleas, "substantially conforms" with due process guidelines set forth by the United States Supreme Court.

     After reviewing the entire state court record of both the 2003 and 2006 proceedings, there is no doubt that plaintiff was afforded every measure of due process.  With regard to variance action in 2003, he failed to appeal the decision of the Court of Common Pleas of Allegheny County.  In the special exception action, plaintiff unsuccessfully appealed to the Court of Common Pleas of Allegheny County, the Commonwealth Court of Pennsylvania, and the Supreme Court of Pennsylvania.  Plaintiff was given a full opportunity to be heard and the sheer volume of the state court proceedings indicates that his cases were considered and he was afforded a full judicial mechanism within which to challenge the administrative decisions to deny his applications regarding the zoning laws affecting his property.  Simply because plaintiff was unhappy with the result does not implicate a violation of his constitutional rights to procedural due process. Finally, to the extent plaintiff now claims that defendants did not provide certain documentation to the state courts, as defendants point out, and this Court agrees, plaintiff had every opportunity to counter-designate the record or submit additional evidence and failed to do so.  See Pa. R. App. Pr. Rule 2154.

**D.     Qualified Immunity**

The next question is whether the individual defendants are entitled to qualified immunity. In analyzing qualified immunity claims for the individual defendants' violation of a constitutional right, the Court must apply a two-step inquiry. *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1774, 167 L.Ed.2d 686 (2007); *see also Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001). In *Scott*, the United States Supreme Court set forth the first question: "'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.'" *Scott*, 127 S. Ct. at 1774 (quoting *Saucier*, 533 U.S. at 201). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id.*

After conducting the above analysis, this Court finds that the defendants are entitled to qualified immunity for their alleged actions because plaintiff has failed to set forth any facts or evidence to show that the individual defendants actions violated plaintiff's constitutional rights.

**V.     Conclusion**

For the reasons set forth hereinabove, defendants' motion for summary judgment (doc. no. 99) will be GRANTED, and plaintiff's motion for summary judgment (doc. no. 88) will be DENIED.  Plaintiff has failed to put forth any evidence from which a rational fact finder could find that the actions of defendants constitutes a violation of his constitutional rights under the

Fourteenth Amendment.[4]  Plaintiff's "motion to strike defendants' following concise statements of undisputed material facts" (doc. no. 109), his belated "motion to compel answer and documents to the Interrogatories" (doc. no. 117), and his "motion to strike to sustain plaintiff's reply in support of his summary judgment motion" (doc. no. 118) will be DENIED.  Defendant's motion to strike plaintiff's response to defendants' motion for summary judgment and plaintiff's reply brief to the summary judgment motions (doc. no. 119) will be DENIED AS MOOT.  An appropriate order follows.

        s/Arthur J. Schwab
        Arthur J. Schwab
        United States District Judge

cc:   All counsel of record

George L. Koynok
2850 Glenmore Avenue
Pittsburgh, PA 15216

---

[4]Defendants also argue that this action is barred by res judicata/collateral estoppel and the *Rooker-Feldman* doctrine.  While the Court agrees with defendants that the 2003 variance action, the 2006 special exception action, and the instant case many similarities (including claims of violation of constitutional rights of substantive and procedural due process - - see. doc. no. 68-13, p. 9, fn 15 and duplicate copy at doc. no. 116-1, p. 9 fn 15), and the findings of the state court in those regards should be given preclusive effect (see ¶¶ 18, 25, 26 and 27 of Background Facts in Section II hereinabove), the Court notes that at least plaintiff's equal protection claims appears to have been raised in this Court for the first time.  Nonetheless, the Court has considered each of plaintiff's claims on the merits, even though in many instances it appears that he is simply using this Court in an attempt to appeal the rulings of the Pennsylvania state courts in his variance and special exception actions, and recasting them as constitutional violations.